## W. P. KNOTE v. N. J. CALDWELL *et al.*

TAX DEED — *Sufficient Description.* Where a tax deed describes the property conveyed as "Lot No. seventy-seven (77) Main street, in E. L. Lower's addition to the town of El Dorado, situated in the county of Butler, and state of Kansas," and the evidence shows that Lower filed in the office of the register of deeds three different maps or plats of his addition or additions, each including and showing the property as described in the tax deed, and the first map does not name or number the addition, and the second map names it "E. L. Lower's second addition," and the third map is substantially the same as the second map, and the certificate attached to the second map shows that the second map was filed partially to correct and supply an omission in the first map, and the certificate attached to the third map shows that it was filed partially to correct and supply a defect in the second map, and the taxes were levied and the property sold for the taxes long before the second map was filed, and while the property conveyed by the tax deed is shown by all the maps, yet there is no property shown by either map that would answer to the description of the property as described in the tax deed, except the property in controversy, *held,*

that the description of the property in controversy as found in the tax deed is sufficient.

### Error from Butler District Court.

ACTION in ejectment, by *Knote* against *Caldwell* and another. Trial on December 27, 1887, before E. D. S., judge *pro tem.*, without a jury, and judgment for defendants. The plaintiff brings the case here. The material facts appear in the opinion.

*Clogston, Hamilton, Fuller & Cubbison,* for plaintiff in error.

*Sterry & Gardner,* and *E. N. Smith,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought in the district court of Butler county by W. P. Knote against N. J. Caldwell and J. S. Caldwell, to recover lots 77 and 79 on Main street, in E. L. Lower's addition or second addition to the town of El Dorado. The case was tried before the court without a jury, and judgment was rendered in favor of the defendants and against the plaintiff; and the plaintiff, as plaintiff in error, brings the case to this court.

The plaintiff claims title under a quitclaim deed executed to him on January 4, 1887, by E. L. Lower and wife, for the expressed consideration of $1. The defendants claim title under two tax deeds, one for each lot, executed to James A. DeWar on May 11, 1878, upon a tax sale made May 10, 1872, for the taxes of 1871, for the expressed consideration of the taxes paid for the years 1871 up to 1877 inclusive, and under a general warranty deed executed to N. J. Caldwell by DeWar and wife on May 24, 1878. The Caldwells have also been in the actual possession of the property ever since they received their deed therefor, paying all the taxes thereon, and they have also made lasting and valuable improvements thereon. It is their homestead. It is admitted by all the parties that E. L. Lower, or Edward L. Lower, was the original owner and patentee of the property in controversy, and in-

30 — 43 KAS.

deed of all the land out of which all the several additions made by him to the town of El Dorado were created, by whatever name or number such additions may be designated.

The only question of importance presented in this case is, whether the foregoing tax deeds describe the land in controversy with sufficient accuracy to render them valid as conveyances. The tax deed for lot number 77 describes the property as follows:

"Lot No. seventy-seven (77) Main street, in E. L. Lower's addition to the town of El Dorado, situated in the county of Butler and state of Kansas."

The tax deed for lot No. 79 contains the same description except that where the words and figures "seventy-seven (77)" are used, the words and figures "seventy-nine (79)" are used.

The only alleged defect in these descriptions as urged by the plaintiffs is, that where the words "E. L. Lower's addition" are used in the tax deeds, the words "E. L. Lower's second addition" should be used. In other words, the supposed defects are that the descriptions are incorrect because the word "second" is omitted from them. Each tax deed being perfect in form, it is, of course, *prima facie* evidence of its own correctness. It must be presumed *prima facie* from the tax deeds, that in 1871, and subsequently thereto, there were town lots answering to the descriptions given to town lots Nos. 77 and 79 in the tax deeds; and that these town lots were properly assessed and taxed and sold for the taxes by these descriptions. The question then arises, are these descriptions, as shown by the evidence outside of the tax deeds, incorrect?

The defendants offered to introduce in evidence three maps or plats, with proper certificates attached thereto, of additions to the town of El Dorado, all made, signed and acknowledged by Edward L. Lower and his wife. The first was filed in the office of the register of deeds on July 6, 1870; the second was filed in the office of the register of deeds on December 11, 1877; and the third and last was filed in the office of the register of deeds on March 18, 1878. Each of these maps or

plats showed the property in controversy as a part of the addition of which it was a map or plat.

Each showed that the property was located at the southeast corner of a certain block of lots and at the intersection of Main street and Eighth avenue, being west of Main street and north of Eighth avenue. So far as the property in controversy is concerned and the block of lots in which it is contained and the streets adjoining it, the three maps or plats show precisely the same, though in other respects there are some differences between them. The first map, with the certificate attached thereto, does not give any name or number to the addition. The second map or plat, with the certificate attached thereto, is entitled "Plat No. 2, Lower's addition." The certificate states that the addition shall be known as "E. L. Lower's second addition to the town of El Dorado," and it also states as follows:

"This plat is made to correct and supply an omission in the original plat of said addition, filed in the office of the register of deeds of said county, July 6, 1870."

The third map or plat is similar to the second, but the certificate attached thereto contains this additional clause, to wit:

"This plat is made to correct and supply a defect in the description and acknowledgment of a plat of said addition filed in the office of the register of deeds of said county, on the 11th day of December, 1877, and recorded in book 'A' of town plats at page 44, made to correct and supply an omission in the original plat of said addition filed in the office of the register of deeds of said county July 6, 1870."

The first map with its certificate was erroneously excluded by the court below at the instance of the plaintiff, and was not permitted to be introduced in evidence. This was an error, however, against the defendants, and not against the plaintiff.

The other two maps with their certificates were introduced in evidence. There was also much other evidence relating to E. L. Lower's addition to the town of El Dorado as it existed years before either of the other two maps was filed. It will be noticed that the second map was not filed until Decem-

ber 11, 1877, and it was then filed partially for the purpose of supplying an omission in the first map filed. It was filed more than seven years after the first map was filed, more than six years after the taxes were levied, and more than five years after the tax sales were made upon which the defendants' tax deeds are founded. The erroneous exclusion of the first map at the instance of the plaintiff we think is not fatal to the defendants' case. Aside from this first map the other evidence shows that as early as 1870 there was in fact an E. L. Lower's addition to the town of El Dorado. The evidence also shows that the property in controversy was in such addition and in fact in all of E. L. Lower's additions to the town of El Dorado; and that there is not now, and never has been, any other lots numbered 77 and 79 in any one of such additions than the lots now in controversy, and that these lots numbered 77 and 79 have always abutted upon Main street, and each of the maps filed so shows. Ever since July 6, 1870, the property in controversy has been in E. L. Lower's addition to the town of El Dorado, just as stated in the tax deeds, and up to December 11, 1877, it was not in any other addition. After that time it might perhaps be proper to describe it as being in either E. L. Lower's addition to the town El Dorado, or E. L. Lower's second addition to the town of El Dorado. Either description would probably now be good. Section 153 of the tax law reads as follows:

"SEC. 153. In all advertisements, certificates, papers or proceedings relating to the assessment and collection of taxes and proceedings founded thereon, any description of lands which shall indicate the land intended with ordinary and reasonable certainty, and which would be sufficient between grantor and grantee in an ordinary conveyance, shall be sufficient."

With reference to supposed imperfect descriptions, see the following cases: *Comm'rs of Jefferson Co. v. Johnson*, 23 Kas. 717; *Seaton v. Hixon*, 35 id. 663; *Cordes v. The State*, 37 id. 48, 51; *School District v. Lumber Co.*, 41 id. 620; *The State v. Reno*, 41 id. 674; *The State v. Sterns*, 28 id. 158; *Mumper v. Kelley*, ante, p. 256. The tax deeds are valid upon their face,

and nothing has been shown to render them invalid. The property in controversy is situated in E. L. Lower's addition to the town of El Dorado. It is also situated in E. L. Lower's second addition to the town of El Dorado. And it is also situated in E. L. Lower's third addition to the town of El Dorado, if the filing of a third map constitutes the creating of a third addition. In other words, each of these additions includes the property in controversy; and in each of these additions the property may be described as lots numbers 77 and 79 on Main street, and there is no other property in any one of these additions that will answer to any such description.

The judgment of the court below will be affirmed.

All the Justices concurring.